## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

| | |
|---|---|
| FLOYD SCROGHAM, Individually And On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT L. REID, SCOTT B. KAUFFMAN, JERRY R. LICARI, J. CHANDLER MARTIN, T. GRAY MCCASKILL, H. RAY MCKENNEY, JR., JOHN C. REDETT, BOYD C. WILSON, JR., COMMUNITYONE BANCORP, and CAPITAL BANK FINANCIAL CORP.,<br><br>Defendants. | C.A. No. _____<br><br><br><br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Floyd Scrogham ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for his own acts, which is alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      This is a stockholder class action brought by Plaintiff on behalf of the holders of the common stock of CommunityOne Bancorp ("CommunityOne" or the "Company") against CommunityOne and its board of directors (the "Board") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder, in connection with the proposed sale of CommunityOne to Capital Bank Financial Corp. ("Capital Bank") (the "Proposed Transaction").

2.      CommunityOne acts as the holding company for Community Bank, N.A., which in

1

turn offers personal and business banking products and services in North Carolina. In particular, the Bank offers checking and savings accounts; and debit and credit cards; mortgage loans, such as fixed and adjustable rate mortgages, refinancing, construction loans, and special loan programs; and home equity loans. In addition, the Bank offers wealth services, including private banking, investment management, retirement planning, and the like.

3.     On November 23, 2015, CommunityOne and Capital Bank jointly announced that they had reached a definitive Agreement and Plan of Merger ("Merger Agreement") whereby CommunityOne will merge with and into Capital Bank, with Capital Bank surviving the transaction. Pursuant to the Merger Agreement, each outstanding share of CommunityOne common stock will be converted into the right to receive either: (i) $14.25 in cash or (ii) 0.430 shares of Capital Bank Class A common stock. Notably however, no more than 85% of the outstanding CommunityOne shares may be converted into shares of Capital Bank and no more than 15% of the outstanding CommunityOne shares may be converted into cash. In addition, two members of the Board will join the board of directors of Capital Bank following the close of the Proposed Transaction.

4.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Form S-4 Registration/Joint Proxy Statement ("S-4") to be filed with the U.S. Securities and Exchange Commission ("SEC") on December 21, 2015. The S-4 recommends that CommunityOne stockholders vote in favor of approving the Proposed Transaction following an unfair process, in exchange for inadequate consideration, and without disclosing all material information concerning the Proposed Transaction to Company stockholders.

5.     First, the Merger Consideration that Capital Bank has offered to CommunityOne's public stockholders is grossly unfair and inadequate because the intrinsic value of CommunityOne's common stock is materially in excess of the amount offered, giving due consideration to, among other things, the Company's growth and anticipated operating results, net income, and profitability. As detailed herein, CommunityOne stock had increased more than 40% during the last twelve months. CommunityOne's strong financial performance is the culmination of a more than three year-turn around during which it was forced to seek a recapitalization in 2011 and its former CEO was removed in 2014. Accordingly, the Merger Consideration does not reward stockholders for the Company's recent and anticipated success, nor justify the Individual Defendants' abandonment of the Company's carefully conceived corporate strategy as it continues to rebound and flourish.

6.     Second, the process by which Defendants propose to consummate the Proposed Transaction is fundamentally unfair to Plaintiff and the other common stockholders of CommunityOne. Specifically, the Merger Agreement contains deal protection devices that unreasonably deterred third parties from making a competing offer to purchase the Company including, *inter alia*, the following: (i) a "no-shop" provision that prevents the Company from negotiating with or providing confidential Company information to competing bidders except under extremely limited circumstances; and (ii) a $14 million termination fee to be paid to Capital Bank if the Board agrees to a competing proposal.

7.     Exacerbating matters, Capital Bank has entered into a support agreement with each of Oak Hill Capital Partners III, L.P. and Oak Hill Capital Management Partners III, L.P. (collectively, "Oak Hill") and Carlyle Financial Services Harbor, L.P. ("Carlyle"). Oak Hill and Carlyle each beneficially own in the aggregate approximately 23.9% of the outstanding shares of

3

CommunityOne stock. The support agreements generally require that the shareholders vote two-thirds of their shares of CommunityOne in favor of the Proposed Transaction and against alternative transactions.

8.     These deal protection and support provisions, particularly when considered collectively, substantially and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of CommunityOne.

9.     Third, Defendants have now asked CommunityOne stockholders to support the Proposed Transaction, based upon the materially incomplete and misleading representations and information contained in the S-4. Specifically, the S-4 contains materially incomplete and/or misleading information concerning: (i) the Company's financial projections; (ii) the financial analyses of the Proposed Transaction performed by CommunityOne's and Capital Bank's financial advisors; and (iii) the background of the Proposed Transaction. Without this information, CommunityOne stockholders are unable to knowledgably vote for or against the Proposed Transaction or exercise their state appraisal rights.

10.     In short, for these reasons and as set forth in detail herein, the Proposed Transaction is designed to unlawfully divest CommunityOne's public stockholders of the Company's valuable assets following a flawed, self-serving sales process, in exchange for inadequate consideration, and without fully disclosing all material information concerning the transaction to the Company's stockholders. To remedy Defendants' Exchange Act violations, Plaintiff seeks injunctive relief preventing consummation of the Proposed Transaction unless and until the material information discussed below is disclosed to CommunityOne stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the

4

Exchange Act.

<strong><u>JURISDICTION AND VENUE</u></strong>

11.     Pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, this Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.  17C.F.R. § 240. l4a-9.

12.     The Court has jurisdiction over Defendants because each is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because CommunityOne maintains its primary place of business in this District.

<strong><u>THE PARTIES</u></strong>

14.     Plaintiff is, and at all relevant times was a shareholder of Defendant CommunityOne since prior to the wrongs complained of herein.

15.     CommunityOne is a corporation organized and existing under the laws of North Carolina, with its principal executive offices located at 1017 East Morehead Street, Suite 200, Charlotte, North Carolina 28204.

16.     Defendant Robert L. Reid ("Reid") is Chief Executive Officer ("CEO") of CommunityOne since 2014.  Reid is and has been a director since 2011.

17.     Defendant Scott B. Kauffman ("Kauffman") is a Partner at Oak Hill.  Kauffman is and has been a director of CommunityOne since 2011.

18.     Defendant Jerry R. Licari ("Licari") is and has been a director of CommunityOne since 2011.

5

19. Defendant J. Chandler Martin ("Martin") is and has been a director of CommunityOne since 2011.

20. Defendant T. Gray McCaskill ("McCaskill") is and has been a director of CommunityOne since 2013.

21. Defendant H. Ray McKenney, Jr. ("McKenney") is and has been a director of CommunityOne since 2006.

22. Defendant John C. Redett ("Redett") is and has been a director of CommunityOne since 2014.

23. Defendant Boyd C. Wilson, Jr. ("Wilson") is and has been a director of CommunityOne since 2011.

24. The Defendants above are collectively referred to hereinafter as the "Individual Defendants."

25. Capital Bank is a Delaware corporation, with its principal executive offices located at 121 Alhambra Plaza Suite 1601, Coral Gables, FL 33134.

26. Collectively, the Individual Defendants, CommunityOne and Capital Bank are referred to herein as the "Defendants."

## CLASS ACTION ALLEGATIONS

27. Plaintiff bring this action on his own behalf and as a class action pursuant to rule 23 of the Federal Rules of Civil Procedure, on behalf of all holders of CommunityOne common stock who are holders of record and entitled to vote on the Proposed Transaction and are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

6

28. This action is properly maintainable as a class action because:

   (a) The Class is so numerous that joinder of all members is impracticable. As of October 31, 2015 CommunityOne had outstanding approximately 24,292, 179 shares of Common Stock. Class members are believed to be geographically dispersed.

   (b) Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff s claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

   (c) The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

   (d) To the extent Defendants take further steps to effectuate the Proposed Transaction, preliminary and final injunctive relief on behalf of the Class as a whole will be entirely appropriate because Defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

29. There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

   (a) Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

7

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated as presently anticipated.

## SUBSTANTIVE ALLEGATIONS

*The Flawed Sales Process*

30.     As revealed by the Proxy, the Proposed Transaction is the result of an inherently flawed sales process, throughout which the Board exhibited a clear preference to negotiate with Capital Bank, to the detrimental exclusion of another interested party, Company B. Most importantly, the process described in the Proxy is devoid of certain information necessary for CommunityOne stockholders to reasonably judge the character and propriety of negotiations leading to the Proposed Transaction, as detailed below.

31.     The sales process leading to the Proposed Transaction substantively began in January 2015, when the Board began to consider acquisitions of bank and nonbank entities, mergers of equals and strategic sales. Accordingly, CommunityOne had discussions with five entities from January 2015 through April 2015. As part of this process, the Company met with representatives from Company B, resulting in CommunityOne entering into a non-disclosure agreement ("NDA") with Company B on January 20, 2015. CommunityOne reviewed several other acquisition opportunities of banking institutions during January through June 2015, but concluded that, given its then current stock price, it would not be competitive in any of those situations.

32.     At some point thereafter, the Board formed a Strategic Planning Committee ("Committee") to review strategic alternatives. From April 2015 through August 2015,

8

CommunityOne unsuccessfully pursued the acquisition of a nonbank company that engaged in Small Business Administration ("SBA") lending.

33.     In May 2015, the Board undertook a formal assessment process of its performance, prospects and alternatives to increase shareholder value, using the assistance of two banks as advisors, Sandler O'Neill + Partners ("Sandler O'Neill") and UBS Securities LLC ("UBS"). After the assessment process, the Board agreed on July 23, 2015 to engage Sandler O'Neill and UBS to assist CommunityOne in assessing several strategic alternatives.

34.     From July through September 2015, Sandler O'Neill and UBS approached three companies, including Company B, about a potential "merger of equals" transaction, and CommunityOne management had discussions with each of these companies, two of which eventually declined to move forward because of other strategic priorities. Management continued discussions with Company B and provided Company B with access to a diligence data room. CommunityOne and Company B discussed the possibility of structuring a merger of equals, but Company B expressed several structural concerns and other anticipated challenges.

35.     During this same time period, after initial contact was made with the companies about a potential merger of equals, Sandler O'Neill and UBS also approached seven additional companies, including Capital Bank, about a potential strategic sale of CommunityOne. Capital Bank expressed an interest in a potential transaction, along with three other companies (Company C, Company D and Company E), all of which (including Capital Bank) signed NDAs with CommunityOne.

36.     On October 8, 2015, the President, CEO, and Chief Financial Officer ("CFO") of Capital Bank met with representatives of the two largest shareholders of CommunityOne, affiliates of Carlyle and affiliates of Oak Hill.

9

37.     On or about October 14, 2015, Capital Bank and Company B each provided a non-binding expression of interest that involved a combination of stock and cash as consideration. Capital Bank proposed a fixed price of $13.00 per share of CommunityOne common stock, while Company B proposed an exchange ratio that implied a per share value of CommunityOne common stock of approximately $11.12 - 11.47 based on the market price of Company B's stock at that time.

38.     At the October 19, 2015 Board meeting that followed, the Board decided to inform Company B and Capital Bank they need to improve the expressions of interest to include more stock and a higher consideration, board representation commensurate with pro forma ownership and, in the case of Company B, management participation, given the larger percentage ownership that CommunityOne shareholders would have in the pro forma company. As such, the Board began negotiating for their own post-transaction employment concurrently with substantive deal terms. The Company's financial advisors communicated this direction to Company B and Capital Bank.

39.     On November 13, 2015, CommunityOne received a revised written expression of interest from Capital Bank, which raised its price to a fixed price of $14.00 per share of CommunityOne common stock, and offered to name two current directors of CommunityOne to the Capital Bank board. The following day, the Committee met to discuss the revised written expression of interest from Capital Bank and determine whether to contact Company B for its revised expression of interest. As a result of this meeting, Sandler O'Neill was directed to contact Company B's financial adviser and advise them that CommunityOne would require a revised expression of interest from Company B for CommunityOne to continue to pursue discussions.

40.     On November 16, 2015, Company B provided an oral revised expression of interest,

with an exchange ratio that implied a per share value of approximately $12.75, given the market price of Company B's stock. The Committee met on November 16, 2015 to consider the recent revised expressions of interest from Capital Bank and Company B. At this meeting, the Committee determined to recommend to the Board that the Board approve moving forward with the process with only Capital Bank.

41.     Accordingly, on November 17, 2015, the Board, excluding the directors who represent Carlyle and Oak Hill, held an informational meeting to evaluate the Capital Bank revised expression of interest and the results of the process relating to Company B. The Board concluded unanimously (albeit inexplicitly) that approaching Company B to negotiate any further increase in its offer to approach the revised, higher offer from Capital Bank would not be successful and thus should not be further considered.

42.     After the meeting on November 17, 2015, Sandler O'Neill and UBS negotiated an increased price with Capital Bank, reaching an exchange ratio of 0.43 for the 85% of the purchase price to be represented by stock, and $14.25 per share for the cash portion of the purchase price. Shortly thereafter, on November 22, 2015, the Board held a meeting to further evaluate and consider the terms of the Proposed Transaction with Capital Bank. Management also reviewed the agreement reached with executive management, and accepted by Capital Bank, relating to executive managements' change-of-control and golden parachute payments. Following this self-serving initiative, Sandler O'Neill rendered its oral opinion to the Board, that the exchange ratio and cash price in the merger were fair from a financial point of view. Thereafter, the Board unanimously determined the merger to be in the best interests of CommunityOne and its shareholders.

11

***The Proposed Transaction***

43.     On November 23, 2015, CommunityOne and Capital Bank issued a joint press

release announcing the Proposed Transaction which stated:

> CHARLOTTE, N.C., Nov. 23, 201 5 (GLOBE NEWSWIRE) -- Capital Bank Financial Corp. (CBF) and CommunityOne Bancorp (COB) today jointly announced the execution of a definitive merger agreement, pursuant to which Capital Bank will acquire CommunityOne. The combination will strengthen Capital Bank's franchise in North Carolina, particularly in Charlotte, as well as in Greensboro/Winston Salem and the Catawba/Caldwell county area.
>
> Under the terms of the agreement, Capital Bank will acquire CommunityOne by merger, with Capital Bank being the surviving corporation. In the merger, CommunityOne shareholders shall have the right to receive, at the election of each holder and subject to proration, $14.25 per share in cash or 0.43 of a share of Capital Bank Class A common stock, with the total consideration to consist of 85% stock and 15% cash. Based on Capital Bank's closing price of $33.59 as of Friday, November 20, 2015, the merger consideration is valued at approximately $350 million. Capital Bank intends to appoint Bob Reid and Scott B. Kauffman who are current CommunityOne board members to the Capital Bank board of directors upon the completion of the transaction.
>
> The transaction price is a multiple of 1 .3x CommunityOne's tangible book value as of September 30, 2015. Capital Bank estimates single-digit EPS accretion in 2016 excluding merger charges and double digit accretion in 2017 and thereafter, which implies an estimated earn-back period of approximately 2.3 years. The transaction has been unanimously approved by the Board of Directors of each company and is subject to Capital Bank and CommunityOne shareholder and regulatory approvals and other customary closing conditions and is expected to close in first quarter 2016.
>
> Capital Bank's Chairman and CEO, Gene Taylor, commented, "This combination creates a high-powered Carolinas franchise while meeting the financial expectations of our shareholders. CommunityOne brings us skilled employees, a complementary branch network, and high-quality loan and deposit relationships, and the transaction improves Capital Bank's returns. We applaud the excellent work of CommunityOne's leadership in turning around one of the Carolina's oldest franchises, and we welcome CommunityOne employees to the Capital Bank team."
>
> CommunityOne's President and CEO Bob Reid added, "We are proud of what we have accomplished at CommunityOne, returning a historic 100 year franchise to profitability and service to its communities and customers. The hard work of our employees over the past four years has put us in position to partner with one of the most exciting growth stories among southeast regional banks. By joining up with

12

Capital Bank, we'll be able to do even more for our customers and communities."

Capital Bank CFO, Chris Marshall commented "CommunityOne represents a great opportunity to expand into another highly attractive Southeast market with enormous growth potential. The acquisition is priced right, and demonstrates our disciplined approach toward capital deployment and consistently improving shareholder returns."

44.     Before announcement of the Proposed Transaction, CommunityOne stock had increased more than 40% during the last twelve months and it had reported consistently profitable earnings and was beating analysts' expectations. Thus, the per share consideration being offered to CommunityOne public stockholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of CommunityOne' s common stock is materially in excess of the amount offered given the Company's recent financial performance together with its prospects for future growth and earnings.

***The Preclusive Deal Protections***

45.     On top of the inadequate Merger Consideration and flawed process, the Board also agreed to terms in the Merger Agreement that substantially favor Capital Bank and are calculated to unreasonably dissuade potential suitors from making competing offers.  The terms of the Merger Agreement demonstrate that the Individual Defendants agreed to numerous terms designed to ensure that no other potential bidder would emerge to offer a superior bid for the Company.

46.     For example, the Merger Agreement contains several preclusive deal protection devices including, *inter alia*:  (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers or even continuing discussions and negotiations with potential acquirers; (ii) an information rights provision that requires the Company to disclose the identity of any competing bidder and to furnish Capital Bank with the terms of any competing bid; (iii) a matching rights provision which gives Capital Bank several business days to match any competing

bid; and (iv) a provision that requires the Company to pay Capital Bank a termination fee of approximately $14 million to enter into a transaction with a superior bidder.

47.     By agreeing to a "No Solicitation" provision in Section 6.12(a) of the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals, the Individual Defendants have all but ensured that another entity will not emerge with a competing proposal.

48.     Further locking up control of the Company in favor of Capital Bank, Section 8.2(b) of the Merger Agreement requires the Company to pay a termination fee of $14 million to Capital Bank in the event the Board rescinds its recommendation in favor of the Proposed Transaction and recommends a competing proposal pursuant to the lawful exercise of its fiduciary duties. This further reduces the possibility of maximizing stockholder value through a superior proposal from a third party because a competing bidder would ultimately be required to pay the termination fee, basically requiring a competing bidder to agree to pay a premium for the right to provide CommunityOne stockholders with a superior offer.

49.     In addition to the above preclusions, Capital Bank has also entered into support agreements with Carlyle and Oak Tree. Carlyle, Oak Tree, and several other insiders of CommunityOne collectively own 49.2% of the outstanding shares, effectively guaranteeing the Merger Agreement will be consummated with no other topping Acquisition Proposals.

50.     Ultimately, these preclusive deal protection and support provisions improperly restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all of or a significant interest in the Company. The narrow circumstances under which the Individual Defendants may respond to alternative proposals, and the Company's

14

inability to terminate the Merger Agreement if it accepts a superior proposal, fail to provide an effective "fiduciary out" under the Merger Agreement.

51.     Taken together, the preclusive deal protection devices substantially and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of CommunityOne. The deal protection provisions operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge and that CommunityOne's stockholders will never learn what their investment in CommunityOne is truly worth. By agreeing to these onerous deal protections without adequately "shopping" the Company to maximize value, the Board has breached its fiduciary duties to CommunityOne's stockholders, including Plaintiff, and Capital Bank has actively aided and abetted such breaches.

### The False and Misleading S-4

52.     Finally, it is critical that stockholders receive complete and accurate information about the Proposed Transaction prior to deciding whether to vote in favor of the Proposed Transaction. To date, however, the Individual Defendants have failed to provide CommunityOne stockholders with such information, in violation of Sections 14(a) and 20(a) of the Exchange Act. As set forth in more detail below, the S-4 omits and/or misrepresents material information concerning, among other things: (1) the background of the Proposed Transaction; (2) the data and inputs underlying the financial valuation exercises that purportedly support the so-called "fairness opinion" provided by Sandler O'Neill, UBS, and Evercore Group, LLC ("Evercore"); and (3) CommunityOne's financial projections.

15

i.   **Information Concerning the Background of the Proposed Transaction**

53.    The S-4 fails to fully and fairly disclose certain material information concerning the process leading to the Proposed Transaction and the conflicts of interest that infected it, including, among other things:

(a)    The length of the NDA CommunityOne entered into with and Company B on January 20, 2015, as well as any other company mentioned in the S-4 the Company contacted regarding a strategic alternative, and the terms of such NDAs, including whether or not they contained a fall-away provision, or were still in place at the time of the Merger Agreement and the potential impact these NDAs could have on competing proposals for the Company;

(b)    When the Strategic Planning Committee was formed and the Board's rationale behind forming the Committee;

(c)    The reason why the President and CEO and the Chief Financial Officer of Capital Bank held a meeting on October 8, 2015 with representatives of the two largest shareholders of CommunityOne, affiliates of Carlyle and affiliates of Oak Hill;

(d)    The contingencies associated with the Company B proposal as of November 16, 2015 and the reasons why Company B declined to conduct substantial additional due diligence after its initial expression of interest was submitted;

(e)    To what extent the directors who represent Carlyle and Oak Hill were involved in the sales process with Capital Bank and other parties mentioned in the S-4 in which strategic alternatives were discussed; and

(f)    When, during the sales process, Sandler O'Neill disclosed to the Board that an

16

affiliate of Carlyle, which holds CommunityOne stock, owned an indirect interest in Sandler O'Neill, as well as the amount of stock owned and the affiliate's holdings in CommunityOne.

54.     The material omissions above which were contained in statements in the S-4 in the sections titled "Background of the Merger" and "CommunityOne's Reasons for the Merger; Recommendation of CommunityOne's Board of Director's" render these statements false and/or materially misleading in contravention of the Exchange Act.

**ii.     Information Concerning the Financial Analyses of Sandler O'Neill, UBS, and Evercore**

55.     The S-4 fails to fully and fairly disclose certain material information concerning the financial analyses conducted by Sandler O'Neill, UBS, and Evercore that purport to support their fairness opinion. Most significantly, the S-4 fails to disclose *any* of CommunityOne's non-public projected financial data and/or assumptions regarding the Company's future performance.

56.     The Board expressly relied upon this non-public data about the future performance of the Company, particularly on a stand-alone basis, in arriving at its decision to approve and recommend the merger with Capital Bank. Accordingly, the section of the S-4 entitled "CommunityOne's Reasons for the Merger; Recommendation of the CommunityOne's Board of Directors," is rendered false and/or misleading by the failure to disclose this information. It is necessary that this material information be disclosed to shareholders in order for them to make an informed vote on the Proposed Transaction.

57.     Moreover, the section of the S-4 entitled "Opinion of Sandler O'Neill + Partners, L.P." discloses the information that Sandler O'Neill reviewed in rendering its fairness opinion, and references non-public data about the future performance of the Company. As such, this section of the S-4 is also rendered false and/or misleading by the failure to disclose this information.

17

58.     Indeed, the failure to disclose the "estimated" non-public data about the future performance of the Company, referenced but not disclosed in the S-4, further renders the S-4 false and/or misleading with respect to the "Opinion of Sandler O'Neill + Partners, L.P." and "Net Present Value Analysis":

> Net Present Value Analyses. Sandler O'Neill performed an analysis that estimated the net present value per share of CommunityOne common stock assuming CommunityOne performed in accordance with publicly available median analyst earnings per share estimates for CommunityOne for the quarter ending December 31, 2015 and years ending December 31, 2016 and December 31, 2017, 27% earnings per share growth for the year ending December 31, 2018, annual balance sheet growth of 6% for the year ending December 31, 2016 and 8% annually thereafter, and annual loan growth of 10% for the year ending December 31, 2015 and 8% annual loan growth for the years thereafter, as discussed with the senior management of CommunityOne. The analysis also assumed that CommunityOne would not pay any regular cash dividends through 2018.
>
> To approximate the terminal value of a share of CommunityOne common stock at December 31, 2018, Sandler O'Neill applied price to 2018 earnings multiples ranging from 12.0x to 20.0x and multiples of December 31, 2018 tangible book value ranging from 100% to 180%. The terminal values were then discounted to present values using different discount rates ranging from 9.9% to 13.9% chosen to reflect different assumptions regarding required rates of return of holders or prospective buyers of CommunityOne common stock. As illustrated in the following tables, the analysis indicates an imputed range of values per share of CommunityOne common stock of $7.28 to $13.63 when applying multiples of earnings and $8.80 to $17.80 when applying multiples of tangible book value.

**Earnings Per Share Multiples**

| Discount Rate | 12.0x | 14.0x | 16.0x | 18.0x | 20.0x |
|---|---|---|---|---|---|
| 9.9% | $ 8.18 | $ 9.54 | $ 10.90 | $ 12.26 | $ 13.63 |
| 10.9% | 7.94 | 9.26 | 10.59 | 11.91 | 13.23 |
| 11.9% | 7.71 | 9.00 | 10.28 | 11.57 | 12.85 |
| 12.9% | 7.49 | 8.74 | 9.99 | 11.24 | 12.49 |
| 13.9% | 7.28 | 8.49 | 9.71 | 10.92 | 12.13 |

**Tangible Book Value Multiples**

| Discount Rate | 100% | 120% | 140% | 160% | 180% |
|---|---|---|---|---|---|
| 9.9% | $ 9.89 | $ 11.87 | $ 13.84 | $ 15.82 | $ 17.80 |
| 10.9% | 9.60 | 11.52 | 13.44 | 15.36 | 17.28 |
| 11.9% | 9.33 | 11.19 | 13.06 | 14.92 | 16.79 |
| 12.9% | 9.06 | 10.87 | 12.68 | 14.50 | 16.31 |
| 13.9% | 8.80 | 10.56 | 12.32 | 14.09 | 15.85 |

> Sandler O'Neill also considered and discussed with the CommunityOne board of directors how this analysis would be affected by changes in the underlying assumptions, including variations with respect to net income. To illustrate this

impact, Sandler O'Neill performed a similar analysis assuming CommunityOne's net income varied from 25% above estimates to 25% below estimates. This analysis resulted in the following range of per share values for CommunityOne common stock, applying the price to 2018 earnings multiples range of 12.0x to 20.0x referred to above and a discount rate of 11.9%.



Earnings Per Share Multiples

| Annual Budget Variance | 12.0x | 14.0x | 16.0x | 18.0x | 20.0x |
|---|---|---|---|---|---|
| (25.0)% | $ 5.78 | $ 6.75 | $ 7.71 | $ 8.67 | $ 9.64 |
| (15.0)% | 6.55 | 7.65 | 8.74 | 9.83 | 10.92 |
| (5.0)% | 7.33 | 8.55 | 9.77 | 10.99 | 12.21 |
| 0.0% | 7.71 | 9.00 | 10.28 | 11.57 | 12.85 |
| 5.0% | 8.10 | 9.45 | 10.80 | 12.14 | 13.49 |
| 15.0% | 8.87 | 10.35 | 11.82 | 13.30 | 14.78 |
| 25.0% | 9.64 | 11.25 | 12.85 | 14.46 | 16.06 |

\*\*\*

59.    The S-4 expressly states that in order to fully understand the financial analyses, these tables must be read together with the accompanying text. However, the tables and accompanying text, as described above, fail to disclose all of the material information relied on by Sandler O'Neill.

60.    The above statements from the S-4 are rendered false and/or misleading by the omissions of CommunityOne's projected financials and other financial information highlighted above as this information is essential to shareholders' evaluation of the consideration being offered in the Proposed Transaction. Indeed, the projected financial information and data provide CommunityOne's shareholders with a look into the Company's expected future performance, including its potential growth and profitability, which also determines its standalone value. Expected performance valuations are also more reliable than similar forecasts prepared by third-party analysts and other non-insiders as it comes from members of corporate management of the Company, who are intimately involved in the Company and its operations. Accordingly, these types of projected financial metrics and data are disclosures which are highly sought after by stockholders in making their decisions of whether or not to vote in favor of a proposed transactions such as the one here.

19

61.     In addition, with respect to Sandler O'Neill's *Analysis of Selected Merger Transactions*, the S-4 fails to disclose the objective selection criteria and observed company-by-company pricing multiples and financial metrics examined.   The omission of this information renders the following statements in the S-4 false and/or materially misleading in contravention of the Exchange Act:

| | CommunityOne / Capital Bank Financial | Regional Precedent Transactions Group Median |
|---|---|---|
| Transaction price/LTM earnings per share | 43.1x | 24.6% |
| Transaction price/2016 estimated earnings per share(1): | 25.3x | 22.9% |
| Transaction price/Tangible book value per share: | 131% | 178% |
| Transaction price/Adjusted tangible book value per share(2): | 174% | — |
| Core deposit premium(3): | 5.2% | 11.3% |
| Adjusted core deposit premium(2)(3): | 9.3% | — |
| 1-Day market premium: | 4.2% | 20.8% |
| Adjusted 1-Day market premium | 21.4% | — |

(1)     Based on median analyst earnings per share estimates as reported by FactSet.

(2)     Reduction of tangible common equity due to Section 382 limitation of $66 million, as provided by CommunityOne's management.

(3)     Tangible book premium to core deposits calculated as (deal value—tangible equity) / (core deposits); core deposits defined as deposits, less time deposit accounts with balances over $100,000, foreign deposits and unclassified deposits.

62.     These statements in the S-4 are rendered false and/or misleading by the omissions identified because, without the objective selection criteria employed by Sandler O'Neill and the individually observed multiples for the chosen comparable transactions, stockholders are unable to adequately assess whether CommunityOne is being appropriately valued in relation to the precedent transactions selected and reviewed by Sandler O'Neill. For example, without this information, stockholders have a limited ability to gauge whether the applied multiples are appropriate given the differences between CommunityOne and the subject transactions.

63.     And finally, with respect to Sandler O'Neill's *Comparable Companies Analysis*, the S-4 discloses on page 90-91 the mean and median financial information for the "CommunityOne Peer Group", but fails to disclose whether the selected ranges represent the high/low multiples from all the selected companies and fails to disclose the individual financial data used for each of the selected companies making up the CommunityOne Peer Group. The S-4

20

also fails to disclose the pricing data as of November 20, 2015 used to obtain the Price/LTM earnings per share multiples, the price/2015 earnings per share multiples, and the price/2016 earnings per share multiples.

64. The omission of this information renders the following statements in the S-4 false and/or materially misleading in contravention of the Exchange Act:

Capital Bank Financial Comparable Company Analysis

| | Capital Bank Financial | Capital Bank Financial Peer Group Median | Capital Bank Financial Peer Group Mean |
|---|---|---|---|
| Total assets (in millions) | $7,261 | $7,919 | $7,639 |
| Tangible common equity/Tangible assets | 12.25% | 9.13% | 9.11% |
| Tier 1 leverage ratio | 13.60% | 10.28% | 10.21% |
| Total risk-based capital ratio | 16.38% | 12.56% | 12.98% |
| LTM Return on average assets | 0.78% | 0.98% | 1.11% |
| LTM Return on avg. equity | 5.06% | 8.28% | 8.92% |
| LTM Net interest margin | 3.94% | 4.10% | 4.13% |
| LTM Efficiency ratio | 64.8% | 57.2% | 55.9% |
| Loan loss reserves/Gross loans | 0.86% | 0.77% | 0.79% |
| Nonperforming assets(2)/Total assets | 0.99% | 0.97% | 0.97% |
| Price/Tangible book value | 170% | 261% | 263% |
| Price/LTM Earnings per share | 39.5x | 20.6x | 21.4x |
| Price/2015 Earnings per share(3) | 26.4x | 17.8x | 19.5x |
| Price/2016 Earnings per share(3) | 21.2x | 15.8x | 16.8x |
| Current dividend yield | 1.2% | 1.3% | 1.4% |
| Market value (in millions) | $1,470 | $1,489 | $1,844 |

65. These statements in the S-4 are rendered false and/or misleading by the omissions identified because, such omissions are essential to stockholders ability to properly evaluate the analysis performed by Sandler O'Neill. Indeed, the selected comparable companies used in the analysis were chosen because Sandler O'Neill felt they all shared similarities to CommunityOne. Invariably, however, some types of companies will share more similarities to CommunityOne than others, so information relating to Sandler O'Neill's perspective on relative comparability is vital when evaluating the multiples implied by Sandler O'Neill's forecasts, compared to the multiples from the companies Sandler O'Neill selected as part of this analysis. Without the aforementioned information, stockholders ability to understand Sandler O'Neill's analysis is significantly limited, rendering them unable to make a fully-informed decision whether to vote to approve the Proposed Transaction.

**iii.   Information Concerning CommunityOne's Financial Projections**

66. Finally, and as detailed above, the S-4 fails to fully and fairly disclose the financial

21

projections, created by Company management and relied upon by Sandler O'Neill, UBS, and Evercore in conducting their analyses. Specifically, the S-4 provides that Capital Bank's advisor, Evercore, reviewed and relied upon non-public projected financial data to prepare certain valuations of CommunityOne on a standalone and pro forma basis, including reflecting synergies. While the S-4 provides that Capital Bank management prepared the projected financial data for CommunityOne, on information and belief, the non-public inputs utilized to created projections was provided by CommunityOne management.

67.    The omission of this information renders the following statements in the S-4 "CommunityOne Valuation Analysis" (S-4 75) false and/or materially misleading in contravention of the Exchange Act: (i) Standalone Dividend Discount Model Analysis (S-4, 75- 76); (ii) Selected Peer Group Trading Analysis (S-4 76); and (iii) Selected Precedent Transaction Analysis (S-4, 77-78).

68.    These statements in the S-4 are rendered false and/or misleading by these omissions as this information is integral to stockholders' evaluation of the consideration being offered in the Proposed Transaction.  These financial projections provide a sneak peek into CommunityOne's expected future performance (i.e., growth/profitability) and, consequently, its value as a standalone entity.  More importantly, however, this expected performance is more reliable than similar forecasts prepared by third-party analysts and other non-insiders, as it comes from members of corporate management who have their fingers on the pulse of the Company.  Accordingly, it is no surprise that financial projections are among the most highly sought-after disclosures by stockholders in the context of corporate transactions such as this.

## COUNT I

**On Behalf of Plaintiff for Violations of Sections 14(a) and of the Exchange Act Against the Company and the Individual Defendants**

22

69.     Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

70.     SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

71.     During the relevant period, the Individual Defendants disseminated the false and misleading S-4 specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

72.     By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the S-4. The S-4was prepared, reviewed, and/or disseminated by the Individual Defendants. The S-4 misrepresented and/or omitted material facts, including material information about the unfair sale process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets. The Defendants were at least negligent in filing the S-4 with these materially false and misleading statements. The Defendants have also failed to correct the S-4 and the failure to update and correct false statements is also a violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

73.     The omissions and false and misleading statements in the S-4 are material in that a

reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the S-4 and in other information reasonably available to stockholders.

74. By reason of the foregoing, the Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9(a) promulgated thereunder.

75. Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, to the irreparable harm of the members of the Class.

76. Because of the false and misleading statements in the S-4, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure the Individual Defendants' misconduct is corrected.

## COUNT II

### Claims for Violations of Section 20(a) of the Exchange Act Against the Individual Defendants

77. Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

78. The Individual Defendants acted as controlling persons of CommunityOne within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the CommunityOne, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends were false and/or materially incomplete and therefore

24

misleading.

79.     Each of the Individual Defendants were provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

80.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Merger. Thus, the Individual Defendants were intimately connected with and directly involved in the making of this document.

81.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger.  The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

82.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

83.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

25

Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally, as follows:

A.  Declaring this action to be a class action and certifying Plaintiff as the Class representatives and its counsel as Class counsel;

B.  Enjoining, preliminarily and permanently, the Proposed Transaction;

C.  In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

D.  Directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

E.  Awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

F.  Granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  March 14, 2016.

/s/ Janet Ward Black
Janet Ward Black
NC State Bar 12869
Attorney for Plaintiff
Ward Black Law
208 W. Wendover Ave.
Greensboro, NC  27401
336-333-2244
jwblack@wardblacklaw.com

26

/s/ Nancy R. Meyers
Nancy R. Meyers
NC State Bar 23339
Attorney for Plaintiff
Ward Black Law
208 W. Wendover Ave.
Greensboro, NC  27401
336-333-2244
nmeyers@wardblacklaw.com